IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Case No. 06-cr-00002-WDM

UNITED STATES OF AMERICA,

    Plaintiff,

v.

CHRYSANTH G. GRUENANGERL,

    Defendant.

_____

**DEFENDANT'S MOTION FOR DOWNWARD DEPARTURE
ON THE BASIS THAT THE GUIDELINE CALCULATION
SUBSTANTIALLY OVERSTATE THE SERIOUSNESS OF THE OFFENSE**
_____

    The Defendant, Chrysanth G. Gruenangerl, by and through counsel, Scott Poland of Poland and Wheeler, P.C., pursuant to United States Sentencing Guidelines ("USSG") application note 19(C) to § 2B1.1, moves for a downward departure from the recommended sentence and as grounds for this Motion, the Defendant states as follows:

    1.    On page 6 paragraph 24 of the Presentence Investigation Report ("PSIR"), the probation officer states:

> Since the value of the thing to be obtained by a public official exceeded $120,000.00 (but did not exceed $200,000.00), the total offense level is increased by ten levels pursuant to § 2C1.1(b)(2) and § 2B1.1(b)(1)(F).

Probation increased the offense level by ten based on the evidence presented at trial

1

concerning a conversation between Mr. Gruenangerl and Mr. Lane from the Forest Service where Mr. Gruenangerl promised to split a percentage of a commission Mr. Gruenangerl hoped to receive from Dopplemeyer should he be successful in consummating the sale of a new gondola to the Mescalara Apache. Probation accepts at face value the $200,000.00 suggested by Mr. Gruenangerl to Mr. Lane without any regard to the realistic possibility of Mr. Gruenangerl actually completing the sale. If there is no sale, there is no commission to split by anyone. The anticipated benefit to Mr. Gruenangerl and presumably to Mr. Lane, is dependent on a series of yet to be completed acts which were necessary for completion of the sale of the gondola.

2. Application Note 19C to USSG 2B1.1 provides:

> There may be cases in which the offense level determined under this guideline substantially overstates the seriousness of the offense. In such cases, a downward departure may be warranted.

USSG 2B1.1., Application Notes 3(A)(ii) provides "'Intended loss' (I) means the pecuniary harm that was intended to result from the offense; and (II) includes intended pecuniary harm that would have been impossible or unlikely to occur (*e.g.*, as in a government sting operation, or an insurance fraud in which the claim exceeded the insured value)."

Despite this definition of intended loss, the observations made by the Sixth Circuit in *U.S. v. McBride* cannot be ignored. "On the other hand, there is surely some point at which a perpetrator's misperception of the facts may become so irrational that the words 'intended loss' can no longer reasonably apply. For instance, if someone vandalized a federal building by spray painting an incantation that all government gold shall disappear, the 'intended loss' would presumably not be the value of all the gold in Fort Knox, even if the vandal genuinely believed that all the gold would disappear." *U.S. v. McBride*, 262 F.3d 360, 374 (6th Cir. 2004). In *Roen*,

the Court found that "[W]here sentencing is based largely or solely on intended loss, a downward departure may be warranted under the 'economic reality' principle. *U.S. v. Roen*, 279 F.2d 986, 990 (E.D. Wis. 2003). The underlying theory behind this principle is that "where a defendant devises an ambitious scheme obviously doomed to fail and which causes little or no actual loss, it may be unfair to sentence based on intended (but highly improbable) loss determination from the [§ 2B1.1] table." *U.S. v. Forchette*, 220 F.2d 914, 924-25 (ED. Wis. 2002). The *Roen* court correctly points out that the sentencing commission is using intended loss as a "proxy" for the defendant's degree of culpability. *Id*. at 991. Consequently, "[t]hose who devise ridiculous schemes (1) do not ordinarily have the same mental state and (2) do not have the same degree of risk as those who devise cunning schemes. In short, they are not as dangerous. Thus it is entirely proper to mitigate their sentence by a departure.: *Roen*, 279 F.Supp. 2d at 991.

3. The *Roen* court also discussed a second measure of the economic reality of the intended harm which is the variance between the intended loss and the realistic possibility of such a loss.'" *Id*. at 991.

In this case, the discrepancy between the actual loss and the intended loss was extreme. The actual loss was zero. The intended loss was presumably $200,000.00.

The witness in this case in the best position to address the possibility of Mr. Gruenangerl consummating the sale of the gondola was Randy Woolwine from Dopplemeyer. There are several aspects of Mr. Woolwine's testimony at trial which should be mentioned.

As to the likelihood of Mr. Gruenangerl completing the sale, Mr. Woolwine testified as follows:

> . . . Q: In your mind what was the likelihood that they would ever do what was necessary to earn that commission?
>
> A.: Very slim.
>
> Q: Give us a number, one to one hundred, a million to one.
>
> A: A thousand to one.

Trial Transcript, Witness Randall Woolwine, p. 43, attached hereto.

Since Mr. Woolwine had "no dog in the fight", there is no reason to question his estimate of the probability of Mr. Gruenangerl being successful in his endeavors. Nor was there any evidence provided by the government to the contrary.

As to the issue of whether Mr. Gruenangerl provided Dopplemeyer with the necessary information to even get a quote to submit to the Mescalara Apache, we read:

> Q: Isn't true that Mr. McLeod never even got the information for you, and I am not suggesting you are unwilling to share it with him, let me quickly add that, but never asked the questions that needed to be asked in order to do it properly to earn the commission?
>
> A: As far as I know, he never got the information from the ski area that would be required by us in order to even submit a budgetary quote.

Trial Transcript, Witness Randall Woolwine, p. 43, attached hereto.

Earlier in his testimony, Mr. Woolwine had testified that for a citizen to earn a commission under the circumstances presented in this case they would have to take an "active part" in the sale and be one of the "principle reasons" why the ski area would pick Dopplemeyer over a competitor.

Trial Transcript, Witness Randall Woolwine, pp. 39-40, attached hereto.

4

4. The other feature of this case which is disturbing as it relates to the issue of intended loss is that the $20,000,000.00 project contemplated by both Mr. Gruenangerl and Mr. Woolwine was for the installation of a gondola from the base of the mountain at Ski Apache to the summit, not for the replacement of the outdated gondola still in use at Ski Apache which was the subject of the Lane report. Therefore, there is no causal connection between Mr. Gruenangerl's attempt to bribe Mr. Lane to change his report with the goal of condemning the existing gondola and the installation of a new gondola to run from the bottom to the top of the mountain. There does not appear to be any causal connection between these two events. Why would bribing Mr. Lane to change his inspection report with the goal of condemning the existing gondola result in the Mescalara Apache agreeing to purchase a new gondola at a completely different location on the mountain. The defense raises this issue because the $20,000,000.00, which is the basis of the loss determination used by probation and the prosecution, is for a completely different gondola.

> Q: So the 20 or 25 million would be really completely aside from the old gondola running something from the casino to the summit?
>
> A: Yeah. That was just based on the information Chris gave me. Like I said, I have never been there, so I don't know.
>
> Q: Did he give you any reason to think he might be able to put that project together?
>
> A: No.

Trial Transcript, Witness Randall Woolwine, pp. 45-46.

This confusion makes the likelihood of Mr. Gruenangerl's success all the more improbable.

In conclusion, the defense moves for a downward departure from the advisory sentencing guidelines on the basis that the ten level enhancement imposed by probation seriously over represents the seriousness of the offense for which Mr. Gruenangerl was found guilty. Respectfully submitted this 22nd day of November, 2006.

          s/ Scott Poland
          Poland and Wheeler, P.C.
          215 South Wadsworth Blvd., #500
          Lakewood, Colorado 80226
          Telephone: (303) 969-8300
          Fax: (303) 986-4857
          E-Mail: scottpoland@qwest.net

          ATTORNEY FOR DEFENDANT
          CHRYSANTH G. GRUENANGERL

**CERTIFICATE OF SERVICE**

I hereby certify that on November 22, 2006, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses:

Thomas M. O'Rourke
U.S. Attorney's Office
Thomas.O'Rourke@usdoj.gov

          s/ LuAnn Weisman
          LuAnn Weisman, Legal Secretary
          Poland and Wheeler, P.C.
          215 South Wadsworth Blvd., #500
          Lakewood, Colorado 80226
          Telephone: (303) 969-8300
          Fax: (303) 986-4857
          E-Mail: luannweisman@qwest.net