IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Case No. 06-cr-00002-WDM

UNITED STATES OF AMERICA,

    Plaintiff,

v.

CHRYSANTH G. GRUENANGERL,

    Defendant.

_____

**DEFENDANT CHRYSANTH GRUENANGERL'S
UPDATED AND AMENDED SENTENCING STATEMENT**
_____

    The Defendant, Chrysanth G. Gruenangerl, by and through counsel, Scott Poland of Poland and Wheeler, P.C., submits the following Updated and Amended Sentencing Statement for the sentencing hearing set for Thursday, July 19, 2007 at 10:00 a.m.

    1.    On January 9, 2006, a two count Indictment was filed in the District of Colorado charging the Defendant with two counts of bribery of a public official in violation of 18 U.S.C. § 201(b)(1)(A). On September 5, 2006, after a guilty verdict to Count Two was returned,[1] the Court ordered Mr. Gruenangerl placed in a half-way house pending sentencing. The Court ordered that it did not want Mr. Gruenangerl placed in custody pending sentence, but rather placed in a half-way house. Mr. Gruenangerl was subsequently placed at Independence House

---

[1] The jury found Mr. Gruenangerl not guilty of Count One.

Federal where he remained until the staff observed disturbing behavior suggestive of mental illness. Mr. Gruenangerl was then placed at the Psychiatric Unit at Porter Member Hospital on November 24, 2006 where he remained under observation.

2. Prior to sentencing, the defense filed a motion pursuant to 18 U.S.C. § 4241(a) requesting a determination whether Mr. Gruenangerl has a mental disease or defect which may require the need of custody for care or treatment in a suitable facility at sentencing pursuant to18 U.S.C. § 4244. The Court then ordered pursuant to 18 U.S.C. § 4247(b)(C) that:

> (1) Defendant is committed to the custody of the United States Attorney General for a reasonable period, not to exceed thirty (30) days, for placement in a suitable facility for the purpose of conducting a psychiatric or psychological examination to determine Defendant's mental competence to understand the nature and consequences of the sentencing proceeding against him or to assist properly in his defense thereof, as well as a determination of whether he is need of custody for care or treatment in a suitable facility while serving his sentence.
>
> (2) A psychological or psychiatric report shall be prepared by the examiner and filed with this Court, with copies to counsel, no later than February 2, 2007.
>
> (3) Unless impractical, I order that the examination be conducted at the Federal Medical Center in Rochester, Minnesota, the closest facility to this Court. [Document # 140]

3. On April 9, 2007 (beyond the February 2nd deadline set by the Court), Randall Rattan, Ph.D., licensed psychologist, forensic psychologist; Marti Carlson, Ph.D., Chief Psychologist, reviewer and Ronna J. Dillinger, M.S., Pre-Doctoral Psychology Intern Evaluator, from the Federal Correctional Institute, Forth Worth, Texas, Forensic Unit, submitted a report which concludes, as to the issue of competency, "The defendant did not appear to suffer from a mental disease or defect rendering him unable to understand the nature and consequences of

sentencing proceedings or properly assist in his defense. Mr. Gruenangerl is not presently suffering from a mental disease or defect requiring custody for care in an in-patient psychiatric facility as such persons typically suffer from severe Axis I disorders including, but not limited to, mood disorders with psychotic features or other psychotic disorders. The psychiatric staff at FCI Fort Worth reports no history of severe psychiatric illness and no such illness was observed; he has functioned well during his course of study and shows a pattern of early acute distress often observed with first time offenders who have a similar personality trait." The report is concluded by recommending Mr. Gruenangerl for treatment in the Bureau of Prisons 500 hour residential substance abuse treatment program due to his history of alcoholism.

4. Following Mr. Gruenangerl's psychiatric evaluation at FCI Forth Worth, he was returned to Colorado and is presently incarcerated at the federal detention center in Englewood, Colorado awaiting sentencing.

5. The defense filed a timely Objection to the Presentence Investigation Report and two motions for downward departure: one on the basis that the guideline calculation substantially overstates the seriousness of the offense; and second on the basis that there are features in this case that take it outside the guidelines' "heartland". (The defense incorporates by reference the Objection to the Presentence Investigation Report filed with U.S. Probation and the two Motions for Downward Departure [Document ## 129 and 130] previously filed.)

6. The defense asserts that the recommended sentence in the Presentence Investigation Report would produce a sentence that is unfair in this case. As the Court is aware, since the United States Supreme Court's decision in *United States v. Booker*, 125 S.Ct. 735

(2005), strict adherence to the Federal Sentencing Guidelines is not required of the trial court. The guidelines have become advisory in nature.

7. The base offense level for Mr. Gruenangerl's conviction for bribing a public official is 12 pursuant to 2C1.1(a)(2). For the reasons set forth in the Defendant's Motion for Downward Departure on the basis that there are features in this case that take it outside the guidelines "heartland", the defense believes that a four level downward departure is appropriate. A quick summary of the features in this case which take it outside the guidelines' "heartland" would be appropriate:

(a) generally, the public would have benefitted from a new and improved gondola over the 45 year gondola Mr. Gruenangerl hoped to replace;

(b) the bribe to Agent Lane was contingent upon a number of yet to be completed steps which were highly unlikely to occur (Mr. Woolwine from Dopplemeyer, who was in the best position to assess Mr. Gruenangerl's chances of success, put his odds at 1 in 1,000);

(c) no money was ever paid to Mr. Lane;

(d) there is no evidence Mr. Gruenangerl knew Mr. Lane was, in fact, a public official when the offer was made;

(e) the gondola which was the subject of Mr. Lane's report would have had to been replaced within a two year period in any event; and

(f) the status of Mr. Gruenangerl's mental condition, as testified to by Dr. Rapoport (chronic alcoholic).

For these and other reasons contained in the record, there are features in this case which clearly take it outside the "heartland" of cases involving bribery to public officials. Under these

circumstances, the defense believes that base offense level 12 is inappropriate and that an appropriate base offense level should be 8.

8. The Presentence Investigation Report seeks to increase the base offense level by 10 pursuant to 2C1.1(b)(2) and 2B1.1(b)(1)(F). The defense would refer the Court to Defendant's Motion for Downward Departure on the Basis That the Guideline Calculation Substantially Overstates the Seriousness of the Offense for a more detailed analysis of his Objection to this increase. The sum and substance of the Defendant's Objection is that a 10 level increase on the basis that the value of the thing to be obtained by the public official exceeded $120,000.00 but did not exceed $200,000.00 grossly exaggerates the value of the actual bribe offered to Mr. Lane. In this case, there exists a persuasive basis for the trial court to consider a downward departure on the basis of the variance between the intended bribe and the realistic possibility of such a bribe ever being achieved. In a Sixth Circuit decision, *United States v. Fleming*, the court found that "[B]efore the district court may enhance a defendant's sentence based upon intended loss, there must be sufficient evidence to show (1) the defendant intended the loss, (2) defendant had the ability to inflict the loss and (3) the defendant completed all acts necessary to cause the loss. *U.S. v. Fleming*, 128 F.3d 285 (6th Cir. 1997). Applied here, if we assume Mr. Gruenangerl intended the bribe to Mr. Lane, the question must be asked whether he had the ability to achieve the bribe and whether he completed all acts necessary to cause the bribe? Based on the evidence at trial, we know he did not. Accordingly, the Court should depart downward because the resulting offense level substantially over represents the seriousness of the offense. Application note 19(C) to USSG(2)(B)(1.1) provides:

> There may be cases in which the offense level determined under
> this guideline substantially over represents the seriousness of the
> offense. In such cases, a downward departure may be warranted.

9. Under *Koon*, in cases in which the loss determination results in an offense level that substantially over represents the seriousness of the offense, such as a situation would be an encouraged basis for departure. *Koon v. United States*, 518 U.S. 81, 93-95, 116 S.Ct 2035, 135 L.Ed.2 292 (1996). Under the circumstances presented in this case, a reduction of 6 level from the 10 level increase would be appropriate.

10. Despite the Court's admonition to the government that it did not want Mr. Gruenangerl to be placed in custody any longer than absolutely necessary, (for purposes of the psychiatric evaluation) in fact, Mr. Gruenangerl has not been placed back into a halfway house since his return to Colorado and will no doubt remain at FDC Englewood until he is sentenced July 19, 2007. Consideration should be given by the Court to the pre-sentence confinement already served by Mr. Gruenangerl.

## ANALYSIS UNDER 18 U.S.C. § 3553 - REQUEST FOR VARIANCE

11. The principle of "parsimony" is central to § 3553(a), and provides the guiding directive for sentencing. "The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in ¶ 2." 18 U.S.C. § 3553(a) This principle, often traced to the utilitarian school of thought and cited as an influence on the framers, holds that punishment should be no greater than necessary to advance legitimate governmental purposes, such as rehabilitation and deterrence. Norval Morris, *The Future of Imprisonment,* 60 - 62 (1974). *See also* Matthew A. Pauley, *The Juris Prudence of Crime and Punishment from Plato to Hagel*, 39 Am.Juris. 97 (1994). Under the parsimony principle, the only "just sentence"

is one that is derived solely from necessity. Charles de Secondat, Baron de Montesquieu, *The Spirit of Law* bk. XIX, Chapter 14, at 328 (Thomas Nugent Trans., Batoche Books 2001) (1748) (characterizing all other punishment as "tyrannical".)[2]

12. District courts, once again, have broad discretion to take § 3553(a) factors into account at sentencing:

> After *Booker*, district courts have a freer hand in determining sentences. While the Guidelines still exert gravitational pull on all sentencing decisions . . . district courts now have more discretion to tailor sentences to the individual circumstances of a defendant. *Booker* suggests that the sentencing factors articulated in § 3553(a), which the mandatory application of the Guidelines made dormant, have a new vitality in channeling the exercise of sentencing discretion.

*United States v. Trujillo/Terrazas*, 405 F.3d 814, 819 (10th Cir. 2005). *See also United States v. Terrell*, 445 F.3d 1261 (10th Cir. 2006).

13. There is also a pragmatic component to 3553(a). As the PSIR points out, the cost to the federal government and the United States taxpayer per month for imprisonment is $1,952.66. Imposition of sentences to terms of imprisonment that are longer than necessary are not just cruel to the individual defendant, they are utterly wasteful of taxpayer dollars and governmental resources.

14. Foremost amongst the factors to be considered by the Court are "the history and characteristics of the defendant." *See* § 3553(a)(1). This case represents the first felony conviction for this 58 year old individual. As is clear from the psychological evaluation

---

[2] This quotation and authority is from the brief of petitioner in a matter now pending before the United States Supreme Court, *Rita v. United States*, Number 06-5754.

performed on Mr. Gruenangerl [Document #144] alcohol dependence has been a major problem in Mr. Gruenangerl's life. Consideration of this aspect of Mr. Gruenangerl's character was certainly considered by Congress in establishing the 3553 factors. What Mr. Gruenangerl needs is treatment to help him deal with the negative impacts that alcohol abuse has had in his life, not prison.

15. In sharp contrast to the requirements of 3553(a)(1), is 5K2.0.(d)(1) which forbids departure on the basis of drug or alcohol dependency. Thus, the requirements of 3553 are in conflict with the guidelines as it relates to the history and characteristics of Mr. Gruenangerl. In the wake of *Booker*, the defense contends that the advisory guidelines as applied in this case would be unconstitutional to the extent that they forbid the Court from considering Mr. Gruenangerl's serious history of alcohol dependency.

16. 18 U.S.C. § 3553(a)(1) instructs the Court to also look at the nature and circumstances of the offense. In this case, it is impossible to do so without considering the effect that alcohol abuse had on the commission of the underlying offense. It should be noted the defense raised the issue of voluntary intoxication with some success.[3]

17. Even a casual review of the taped conversations between Mr. Gruenangerl and Mr. Lane leads one to conclude they are the ramblings of a drunkard, not a sinister character as portrayed by the government. The Court will recall the testimony of Ester McLeod, Mr. Gruenangerl's former spouse, who informed the Court that Mr. Gruenangerl was too "hung over"

---

[3] The Defendant was found not guilty of Count 1 which charged bribery of a public official. Mr. Gruenangerl's hope of receiving a commission from the sale of the gondola was at best "a pipe dream."

from excessive alcohol abuse the night before to attend a meeting in which all the major players were going to address the issue whether the subject gondola needed to be replaced.

18. 18 U.S.C. § 3553(a)(7) requires the Court to prevent unwarranted sentencing disparities among similarly situated defendants. Given the government's exaggeration of the seriousness of the underlying offense, it is likely significant sentencing disparity would occur if Mr. Gruenangerl were sentenced pursuant to the guidelines. The ten level increase for the value of the thing to be obtained by the public official pursuant to USSG 2C1.1(b)(2) and 2B1.1(b)(1)(F) should be reserved for those cases in which an actual bribe is offered.

19. Since restitution is not a consideration in this case, 3553(a)(6) does not apply.

20. A 46 month sentence is unjust, excessive and disparate. In addition, a 46 month sentence is wholly unnecessary "to protect the public from further crimes of the defendant." 18 U.S.C. §3553(a)(2)(C). Mr. Gruenangerl is 48 years old. His Criminal History Category is II. ***Rigorous data collected by the U.S. Sentencing Commission demonstrate that, among offenders age 41-50 at the time of sentencing who fall within Criminal History Category I, the rate of recidivism is only 6.9%***. United States Sentencing Commission, *Measuring Recidivism: The Criminal History Computation of Federal Sentencing Guidelines* (May 2004). ***In other words, only 1 out of 14 such offenders is going to recidivate***. These figures are especially striking in light of the fact that the definition of recidivism used in this instance was a broad definition that included not only re-conviction but also re-arrest and also even mere violations of supervised release. *Id*. at n.1.

21. Since *Booker*, numerous courts have relied on this well-documented inverse proportionality between age and recidivism rates to reduce sentences. *United States v. Lucania*,

379 F.Supp. 2d 288, 298-99 (E.D.N.Y. 2005) ("Post-*Booker* courts have noted that recidivism is markedly lower for older defendants. . . . The Guidelines . . . do not take into account the inverse relationship between age and recidivism. Accordingly, I will . . . take into account the defendant's ages in fashioning a non-Guidelines sentence."); *United States v. Hernandez*, No. 03 CR 1257(RWS), 2005 WL 1242344, at *5-6 (S.D.N.Y May 24, 2005) ("This court and others have previously declined to impose Guidelines sentences on defendants who . . . were over the age of forty on the grounds that such defendants exhibit markedly lower rates of recidivism in comparison to younger defendants.") (sentencing 48 year old defendant with no prior criminal convictions to 50 months notwithstanding guideline range of 70-87 months); *United States v. Coleman*, 370 F.Supp. 661, 681 (S.D. Ohio 2005) (sentencing defendants to 5 years of probation rather than one year of imprisonment in part because "recidivism is unlikely given the Defendants' ages.") (59 and 63 years old); *United States v. Carmona-Rodriguez*, No. 04 CR 667RWS, 2005 WL 840464, at *3-4 (S.D.N.Y. Apr. 11, 2005) (sentencing 54 year old defendant to a term of 30 months, notwithstanding guideline range of 46-57 months, based in part on "the low probability that [she] will recidivate" given her age); *United States v. Nellum*, No. 2:04-CR-30-PS, 2005 WL 300073, at *2-5 (N.D. Ind. Feb. 3, 2005) (ruling that a sentence of 108 months "while less than the term called for by the guidelines [168-210 months], is sufficient to satisfy the purposes of sentencing" for 57 year old defendant given low likelihood of recidivism.)

22. Taking all relevant factors into consideration, the defense believes that a sentence to two years probation with credit for time served would be appropriate and just in this case.

Respectfully submitted this 23rd day of May, 2007.

                                                    s/ Scott Poland
                                                    Poland and Wheeler, P.C.
                                                    215 South Wadsworth Blvd., #500
                                                    Lakewood, Colorado 80226
                                                    Telephone: (303) 969-8300
                                                    Fax: (303) 986-4857
                                                    E-Mail: scottpoland@qwest.net

                                                    ATTORNEY FOR DEFENDANT
                                                    CHRYSANTH G. GRUENANGERL


## CERTIFICATE OF SERVICE

       I hereby certify that on May 23, 2007, I electronically filed the foregoing Defendant Chrysanth Gruenangerl's Updated and Amended Sentencing Statement with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses:

Thomas M. O'Rourke
U.S. Attorney's Office
Thomas.O'Rourke@usdoj.gov


                                                   s/ LuAnn Weisman
                                                   LuAnn Weisman, Legal Secretary
                                                   Poland and Wheeler, P.C.
                                                   215 South Wadsworth Blvd., #500
                                                   Lakewood, Colorado 80226
                                                   Telephone: (303) 969-8300
                                                   Fax: (303) 986-4857
                                                   E-Mail: luannweisman@qwest.net